The argument has been waived in Hernandez-Jimenez v. Sessions, so we will move on to United Thank you. Good morning, Your Honors. May it please the Court. My name is Blair Westover, and I represent the defendant appellant in this case, Mr. Beck. In this case, at the time of Mr. Beck's guilty plea and sentencing, Mr. Beck's former counsel was the subject of a criminal investigation being conducted by the United States Attorney's Office. The facts are pretty straightforward, so unless there are any additional questions about that, I'd like to address what appears to be a fairly significant disagreement between the defense and the government as to what underlying case law should apply here. Sure, that's fine. I mean, I'm just going to say that Ms. Gambino does, when there's this colloquy on the record, putting to one side the existence of Mr. Sieroski, that she says you could look at it as a potential conflict in the event that he believes that I'm serving the government instead of him. And it's not wordy, but it does seem to identify the big risk of her position as of that point. So he's standing there, he hears whatever had been said before, we all know that he knows that that's the risk. Well, respectfully, I actually don't read it as clear as Your Honor suggests. I don't know, first of all, the district court informs him, before that she says that there's an investigation into one of her clients and that she's become the subject. I don't think that we can assume that most people know, I mean, unless you practice in federal court, I don't think you know what the subject of an investigation is in a technical sense. And if you don't have that information, I think it's very difficult, what you have there is a pretty vague statement. And then when she goes on to say I could be serving the government and not him, I don't think anyone does anything for Mr. Beck to connect the line between why an investigation into someone's client might cause that person to feel like they need to curry favor with the government in your case. I actually think it's a little bit more vague. Well, she says the government's investigating another one of my clients, and she told me that I'm the subject of that investigation. So the judge explores, you know, I know that you don't think that his exploration is adequate, that's your point, but he's probably reluctant to get too much into discussions between lawyer and client is what I'm suspecting. Well, and I understand that that's a certain thing. Well, I mean, in this regard to investigation, later on, the judge says, you're aware, Mr. Beck, Mr. Sikorski is not the same circumstance as Mr. Gambino, he is not being investigated. So I think you assume that being a subject and being investigated is the same. Right, and I understand that, I think that what the court needed to do, well, Hubbard obviously has a list of what this court recommends that district courts do, and I understand that district courts don't need to check off every one of those boxes in order to establish the validity of a waiver for conflict-free counsel. But this court in Hubbard did say that at the minimum, the district court must inform each defendant of the nature and importance of the right to conflict-free counsel, and ensure that the defendant understands something of the consequences of the conflict. So, let's assume. So the judge says, and you're aware you have a right to what's called conflict-free representation, do you understand that? Beck says yes, and so you think more was needed there too? I think more was needed there. I think that he needed to explain what conflict-free counsel meant. Even though he asked Beck whether he understood that, Beck says yes. Well, Beck says that he understood that he has a right to it. And I don't mean to be overly parsing, but it's not, that's not the same as. That's what we're good for. Right. That's why we have lawyers. But I don't, I don't think that that means that he necessarily understood what a conflict-free counsel was. And I, I think that at the very least the court has to say, a conflict, you know, of this type exists. You have the right to either hire or have an attorney appointed who doesn't suffer from this type of personal conflict. But look what would happen down that road. The first thing that would be mentioned is that there's Mr. Sieroski without the conflict. So, we sort of already have solved the problem, haven't we? I don't think so because we don't know that Mr. Sieroski, Ms. Gambino was obviously Mr. Beck's lead counsel. Right? Well, certainly in the sentencing. Certainly in the sentencing. Up until. After the fact, yeah. Right. Until the plea agreement. After, I mean, the plea agreement and sentencing was certainly lead counsel. We don't know that Mr. Sieroski said anything to Mr. Beck. We do know he was at the meeting. He was at the meeting. Yeah, we know that. But we don't know what was said at that meeting or if he made any comments at that meeting. We don't know even how much he knew about the conflict. What we do know is what she said, that Gambino was herself under federal criminal investigation at that time. Yes. So, I mean, obviously he knew the facts that were stated in open court. I mean, clearly he was there. And I concede that point. I think that what the district court needed to do in this case was explain why someone under investigation, to do more to explain why that might impact an attorney's decision making at trial. It's kind of the real practical meaning of it. Yes. Like, you know. Well, then you have to assume you know what the government's going to do. Well, or what this court has done in Hubbard or what other district courts have done under similar circumstances is to explain here's what the government might do. Right? For example, someone being the subject of an investigation, I think at the very least you should explain that means at some point in the future they could be indicted. Right? And if they're indicted, they suffer actual criminal, potential criminal consequences. There's nothing in here that even says in the face of it. That assumes that your client has no idea of anything about the criminal process. I don't think. It's not that you have to have no idea. I think knowing what the subject of an investigation is. I mean, the U.S. Attorney's Office investigates things that aren't criminal. Right? Knowing that the subject of an investigation specifically refers to an individual whose actions have come up in a criminal matter. No, I don't think most people know that. Maybe given the recent news, more people. Well, it was under criminal. She said she was under criminal or that she was under federal criminal investigation. Federal criminal investigation. I mean, what do you have to say beyond that? I mean, she says the government is investigating another one of my clients and has told me that I'm subject to that investigation. So she doesn't use the word criminal herself? Not in that part of the transcript. And as I said, to be honest with you, even if she had, I would still say it's insufficient unless the district court explains to him why it is that being subject to a criminal investigation might lead someone to want to curry favor with the government in a separate case. Or alternatively, why it might make them inclined to be more aggressive or unobjective in their presentation of evidence towards the government. What criminal record did Mr. Beck have? I do not remember Mr. Beck's criminal history off the top of my head. I can find out. Did he have one? I do believe he did, yes. I'm sure that he understood the concept of a criminal investigation. What I'm saying is that it is not intuitive to me. I don't think it's as intuitive as perhaps this court seems to want to, that it is significantly problematic depending upon the attorney. Well, you get a defendant in who's never been in a criminal process. I agree that they may need a little bit more educating. But if you get somebody that's gone through it at least even once, they get an idea of how it works. I mean, I doubt that he's had attorneys that were subject to criminal investigation before. I mean, I don't know. It's the attorney client. It's the attorney client. And this court has also said, and I believe it was in Roth, but this court has said that when it comes to accepting waivers of the right to counsel or the right to conflict-free counsel, we usually demand more than in other sorts of waivers. So there are certainly cases where, for example, I'm into my rebuttal time. You have a minute left of your rebuttal time. In cases where, like, you know, the right to a trial, maybe it's just enough to say, hey, you have this right, do you want to waive it? But when it comes to conflict, when it comes to choice of counsel or the right to counsel, excuse me, courts usually do more because counsel is the party that usually informs the defendant of his other rights. So with that, I'll reserve what remains.  Thank you very much. Ms. Mecklenburg. May it please the court, Sherry Mecklenburg on behalf of the United States. The defendant was advised of at least the three things that this court in the Freeman case deemed necessary for a knowing and valid waiver of counsel's potential conflict, and that is the nature of the potential conflict, specifically that counsel was the subject of an investigation into one of her other clients, some risk of the potential conflict, and that counsel could be serving the government instead of Mr. Beck. And finally, that the defendant had the right to conflict-free counsel, and in this case, in fact, the court pointed out, and so did the prosecutor, that Mr. Soroski was, in fact, conflict-free, that he was not in the same situation. This defendant was familiar with the criminal process. In effect, on note three, page six of the government's brief, it points out that this defendant had been sentenced in another federal case in June 2011, and at that sentencing, and that was two months before he was indicted here, and at that sentencing he had said certain things that weighed with the district court here in sentencing. So does it make any difference where this information comes from? Because you've gone through this, and it's Ms. Gambino who says the government is investigating, blah, blah, blah, told me I'm a subject of that. I don't think she actually says criminally. And it's Ms. Gambino who says maybe I'm serving the government instead of him. You know, here's the nature of it. And the judge doesn't really spell out what that means. And then it's the, I don't know if it was you or whoever the AUSA was, says Mr. Soroski has no potential conflict. The judge there says, right, so you have some confirmation on that third point from the judge, but not on the first and the second. The information does not have to come from the judge, Your Honor, as long as the defendant has the information in making the waiver. And, in fact, in the Lowry case, this court noted in that case that where the district court had ensured that counsel had explained the conflict to the defendant, there was no reason to believe that an experienced defense attorney would be less than forthright with his client. And I cite that and quote it on page 17 of the government's brief. Now, are there any constraints on the judge in a colloquy like this and probing into the conversations that the person has with the lawyers? Of course, Your Honor, and that is the privilege. And also I point out a case in the government's brief. This is a little bit of a minefield for a district court because not only do you have the privilege, but you don't, a district court doesn't want to interfere with the defendant's right to waive the conflict and choose his lawyer. And here, these were not appointed counsel. Mr. Suroski had been retained from the very beginning. I would not characterize Ms. Gambino as lead counsel. She was lead, as you note, for the sentencing. But Mr. Suroski had been Mr. Beck's counsel from the very beginning. They clearly had a relationship. In addition to the waiver, even if the waiver was not effective, Your Honor, the potential conflict does not automatically result in ineffective assistance of counsel in connection with the plea. Well, yeah, you've been very careful to call it a potential conflict, not an actual conflict. Yes. Why? Because she hasn't done anything yet? I mean, she is being investigated. That's ripened. Actually, what I was getting to there, and if I missed a question. I'm sorry. Please let me know. I'm not doing it on purpose. But there is no connection between the conflict and the ineffective assistance of counsel at the plea. Keep in mind, the defendant wants to withdraw his plea, but Mr. Suroski was independent, conflict-free counsel at the plea. Mr. Suroski was part of the plea. The defendant acknowledges that Mr. Suroski discussed the plea with him. Mr. Suroski was present for the plea. He signed the plea agreement. Although Mr. Beck's counsel states that there's no statement as to what Mr. Suroski told him in connection with the conflict or the plea, there's no allegation that Mr. Suroski committed ineffective assistance of counsel. She described her nature of the conflict when she stayed in an open court, that the fear might be that she was, quote, serving the government instead of him, close quote. Yes, Your Honor. And that's it. Well, that is a, there is some, as the court said in both Freeman and Lowery, the defendant has to understand some consequence of this conflict, and that's what she was describing, was that that would be some consequence. Not directly, not anything related to his case as a participant in that, whatever he's charged with. Right. And so finally, Your Honor, after you get past, you have to get past the plea, the waiver colloquy, and the independent conflict-free counsel for the plea, and then we come to the question of whether the defendant is required to show prejudice here. The defendant argues that prejudice should be presumed. The defendant has not cited a single case in this circuit that has held that prejudice is presumed as a result of a potential conflict. And everyone here agrees that it was a potential conflict. When the conflict is potential, as it is here, Strickland governs the inquiry, which, as you know, requires two questions. Well, it requires first that the defendant identify acts or omissions of counsel that are not the result of reasonable professional judgment, and second, the defendant must show some prejudice. The defendant does not even address either prong. The record does not reveal any ineffective assistance. The record does reveal he got sentenced below the guideline range. That's true. That's exactly right. The record reveals that he was able to enter a plea that was very favorable to him compared to the indictment and the charges, and that he received a below-guideline sentence, and it was also below what the government was arguing for. Well, quite a bit below. Yeah. And based on those reasons, Your Honor, if you have no further questions, the government requests that this court affirm the conviction and sentence below. Thank you. All right. Thank you very much. I'll give you a minute, Ms. Westover. Briefly, Your Honor, just on the question of prejudice, we believe that under Holloway does apply to potential conflicts of interest and, indeed, only for the purpose of being potential, potential conflicts of interest where the ineffective assistance is based on an allegation that counsel was conflicted. Holloway applies directly to potential conflicts. In fact, that's the whole point is that we don't know prejudice is presumed because we don't know what effect it would have. Now, if it's not brought to the district court's attention and a potential conflict becomes actual, then under Sullivan you have that reduced burden. Kyler, yeah. But Strickland should not be an issue in any case, regardless of how it comes out in this particular situation. All right. So with that, thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.